Allen, J.
The legal title of Mrs. White, under the unrecorded deed to her must prevail against the subsequent mortgage to the plaintiff, which was duly recorded, unless the plaintiff is a mortgagee in good faith and for a valuable consideration. The statute only declares conveyances not recorded void as against subsequent purchasers in good faith and for a valuable consideration, whose conveyance shall be first recorded. (1 R. S., 156, § 1.) There is no fraud imputed to the plaintiff, and the sufficiency of the consideration for the mortgage, as between the mortgagor and mortgagee, is not questioned. What constitutes a Iona fide purchase for a valuable consideration, as that term is used, and as necessary to give title in any case against the legal owner, or defeat prior equities, was considered in Weaver v. Barden (49 N. Y., 286). We there examined and considered the leading cases bearing upon the question, and, following the current of authority, it was decided that, to entitle a purchaser of property or choses in action to the protection of a court of equity, as against the legal title or a prior equity, he must not only be a purchaser without notice, but also for a consideration actually paid; that he must have actually parted with some value or some right upon the faith of the purchase; that a receiving of the property as security for or in payment of a precedent debt, when no security was surren *142 dered or anything of value parted with, was not a purchase for a valuable consideration.
The result concurred in by the court, with a single dissentient, whose views are expressed in his published opinion, is to be regarded as determining most of the questions presented upon this appeal.
The pre-existing debt of the mortgagor to the firm of which the plaintiff was a member, as security for which the mortgage was given, did not constitute a valuable consideration within the recording acts as against Mrs. White having the legal title under an unrecorded deed. Had it been taken in payment, it would not have been sufficient to give the mortgagee a valid title as against the owner if no security was surrendered or any right given up, and a mortgage taken as security merely can stand on no better foundation than would a like conveyance in payment of an existing indebtedness.
The only question is whether the plaintiff did surrender or yield any right at the time of receiving the mortgage and upon the faith thereof by extending the time of payment of the principal debt then actually due. , If there was an extension of time for a single day by a valid agreement, as a consideration of the mortgage, there was a valuable consideration within the rule. '
We are cited to several cases in which judges have said, in substance, that the taking of a collateral security on time is an extension of the time of payment of the principal debt; that is, that the right of action for the original debt, or upon the original security is suspended until the collateral security shall become due. It is so said in Platt v. Coman (37 N. Y., 440), and in the cases cited by the learned judge in that case. But the remark was not necessary to the decision, and is not supported by authority.
In those cases in which the time for the payment of the original debt has been held to have been extended upon the receipt of a collateral security, there was an express agreement to that effect, as in Mech. & F. Bank of Albany v. *143 Wixson (42 N. Y., 438); Jennison v. Stafford (1 Cush., 168); or a new agreement was made and a substituted contract entered into, as in Howell v. Jones (1 C. M. & R., 97), and Fellows v. Prentiss (3 Den., 612), although in the last case it was probably decided for the defendant on the ground that the debt sought to be recovered was not within the guaranty of the defendant. Other cases are cited by the counsel for the respondent as authorities for the sufficiency of a pre-existing debt as a consideration to support a conveyance of property by the appellant as against the real owner and discharged from any prior equity.
But they are to be classified with those already referred to, or there was an actual consideration passing at the time by the surrender of other securities, the discontinuance of some active proceedings against the debtor, or by the giving up of some right by the creditor and grantee or transferree, and do not conflict with Weaver v. Barden (supra). Among these are Platt v. Coman (supra); Ayrault v. McQueen (32 Barb., 305); Cardwell v. Hicks (37 id., 458); Traders’ Bank of Rochester v. Bradner (43 id., 379); Mickels v. Colvin (4 id., 304); Park Bank v. Watson (42 N. Y., 490); Brown v. Leavitt ( 31 id., 113); Chrysler v. Renois (43 id., 209); Boyd v. Cummings, 17 id., 101). Some other cases referred to in the brief of the counsel turned upon other questions not bearing upon the case at bar.
Here there was no express agreement to extend the time of payment of the original debt, nor was there any new or substituted contract between the parties. The pre-existing obligation remained in full force, and the collateral security was entirely independent of it. Neither in the written receipt of the party or the mortgage, is there found any evidence that the latter, for an instant of time, was to supersede the prior obligation or suspend any remedy upon it.
The debt was not satisfied by or merged in the mortgage, and no security was surrendered or right given up. As if to avoid any implied merger or surrender of any right, the mortgage was not taken to the creditor firm, but in the name of *144 the plaintiff, one of the partners, as trustee in fact, although not in name, for his firm. The mortgage was not in any sense a new contract between the mortgagor and her creditors, and is not within the reasons assigned by the chancellor and Senator Hand for their views in Fellows v. Prentiss.
The judge, on the trial, has found as a fact, that the mortgage was taken by the plaintiff, for and in behalf of the creditor firm of which he was a member, for the purpose of securing the past indebtedness of the mortgagor, and from this fact he has deduced, as a legal conclusion, that there was a suspension of the right to sue upon the original debt; in other words, that by accepting collateral security, the creditors did agree to extend the time of payment. If this were so, the mortgage would be valid. But such is not the law. That the consideration would be sufficient to support a promise or agreement not to sue is not denied, but the law will not imply such an agreement merely from the existence of a consideration, and in the absence of any proof tending to show such an agreement to have been in fact made. The cases are nearly .uniform upon this subject. The question has most frequently arisen in actions against sureties, and the courts have been called upon to declare the legal effect of the acceptance by the creditor of collateral securities from the principal debtor, payable in the future, without the knowledge of the surety. This depended upon the right of the debtor and the surety, if he should be subrogated to sue the original debt at once, notwithstanding the collateral undertakings and securities might not have matured.
The question was before the court in United States v. Hodge (6 How., U. S. R., 279). The postmaster, the principal debtor, had given a mortgage upon real estate, payable at the expiration of six months, for the balance due from him to the post-office department, and the sureties claimed that this was an extension of time of payment and discharged them. The court held' otherwise, and that although the mortgage could not be enforced until after the lapse of six months, it did not operate to extend the time of payment or *145 suspend the right to sue upon the original security. It was held that a collateral security could not affect tbo original debt or the rights of the debtor in respect to it, except as the debt might be satisfied by reason of it. No condition to suspend action upon the prior indebtedness could be implied from the terms of the mortgage or its acceptance by the government. The rights and obligations which result, and the effects which follow the mere taking a collateral security are the same in all cases; that is, the contract must receive the same interpretation and have the same legal effect, whether third persons are or are not to be affected by it. If the legal implication is that by the taking of collateral security, payable in the future, the creditor agrees to forbear to sue upon the original indebtedness for a time, then in all cases sureties would be discharged, and if such is not the legal implication, then the creditor surrenders no right to sue except as he expressly agrees.
The same doctrine was declared by the chancellor in Bangs v. Strong, 10 Paige, 11, citing several cases in support of it at page 16; see also Neimcewicz v. Gahn, 3 Paige, 614; affirmed, 11 W. R., 312. Judge Nelson says, in giving his reasons for affirming the decree of the chancellor: “ It is well settled that merely taking a new security from the debtor, without agreeing to give him time, will not discharge the surety.” That is, that an acceptance of a new security is not per se, and in the absence of any agreement beyond it, a giving of time for the payment of the original debt.
Judge Parsons, in his treatise on Notes and Bills, at page 224, vol. 1, says that in some States (supposed to be those in which, as in this State, Swift v. Tyson, 16 Peters, 1, is not followed), “ it is held that the taking of a note as collateral security for a pre-existing debt, without more, will not place the taker in the place of a holder for value.”
The principle was broadly affirmed and directly applied in Wood v. Robinson (22 N. Y., 564). That was a case of conflicting equities under a trust, and Judge Denio, after considering some other questions, says: “ If, therefore, this decision *146 depended upon the question whether the defendant had notice of the trust, the case would not be free from embarrassment. But the mortgage was taken as collateral security for an antecedent debt, nothing being advanced at the time and no security given up. It is not found that there was any definite contract for extending the credit on the demands which the bank held against Mann; but, for anything which appears, these demands might have been prosecuted immediately, notwithstanding the execution of the mortgage.” The mortgagee was held, for this reason, to have taken subject to prior equities; and see Bell v. Banks (3 M. & G., 258), and Elwood v. Diefendorf (5 Barb., 398).
There was no agreement by the creditor firm to extend the time of payment of the original debt. They could at any time have exercised the right of enforcing the collection of the debt, and as no security was given up, and no value paid, and no suspension or giving up of any right, the plaintiff is not a mortgagee in good faith and for a valuable consideration as against the legal owner of the mortgaged property.
The judgment must be reversed and a new trial granted.
All concur.
Gboveb, J., concurs in result.
Judgment reversed.